UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DANIEL E. GRAY,

               Plaintiff,                         CIVIL ACTION 09-11612

          v.                            DISTRICT JUDGE PATRICK J. DUGGAN

COMMISSIONER OF                   MAGISTRATE JUDGE MARK A. RANDON
SOCIAL SECURITY,

               Defendant.
_____/

**REPORT AND RECOMMENDATION
ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**

## I.    PROCEDURAL HISTORY

###     *A.*    *Proceedings in this Court*

On April 29, 2009, Plaintiff Daniel E. Gray ("Plaintiff") filed the instant suit seeking

judicial review of the Commissioner's decision disallowing benefits (Dkt. No. 1). Pursuant to 28

U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), this matter was referred to the undersigned for

the purpose of reviewing the Commissioner's decision denying Plaintiff's claim for a period of

disability and Supplemental Security Income benefits (Dkt. No. 2). This matter is currently

before the Court on cross-motions for summary judgment (Dkt. Nos. 9, 10).

###     *B.*    *Administrative Proceedings*

Plaintiff filed the instant claims on November 29, 2005, alleging that he became unable

to work on November 4, 2005 (Tr. 45). The claim was initially disapproved by the

Commissioner on June 16, 2006 (Tr. 34-37). Plaintiff requested a hearing and, on May 1, 2007,

he appeared with counsel before Administrative Law Judge (ALJ) Joel G. Fina, who considered

the case *de novo*. In a decision dated June 8, 2007, the ALJ found that Plaintiff was not disabled (Tr. 10-18). Plaintiff requested a review of this decision on June 27, 2007 (Tr. 7, 9). The ALJ's decision became the final decision of the Commissioner when, after the review of additional exhibits[1] (AC-1, Tr. 215-216), the Appeals Council, on March 3, 2009, denied Plaintiff's request for review (Tr. 3-5); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

In light of the entire record in this case, I find that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, it is **RECOMMENDED** that Plaintiff's motion for summary judgment be **DENIED**, Defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

## II.     STATEMENT OF FACTS

### A.     *ALJ Findings*

Plaintiff was 57 years old at the time of the most recent administrative hearing (Tr. 46). Plaintiff's relevant work history included work as a spot welder, welder and well driller (Tr. 18). The ALJ applied the five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff had not engaged in substantial gainful activity since November 4, 2005 (Tr. 15). At step two, the ALJ found that Plaintiff had the following "severe" impairments: hypertension, acute bilateral saddle thrombus of the lungs and deep venous thrombosis. *Id*. At step three, the

---

[1] In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review. *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. *Id.* Between steps three and four, the ALJ found that Plaintiff had the Residual Functional Capacity (RFC) to "occasionally lift up to twenty (20) pounds; frequently lift or carry up to ten (10) pounds; no climbing of ladders, ropes or scaffolds; occasional climbing of ramps or stairs; frequent balancing; occasional stooping or crouching; and no kneeling or crawling. [Plaintiff] must avoid concentrated exposure to unprotected heights." (Tr. 15) At step four, the ALJ found that Plaintiff could perform his previous work as a spot welder, as this work was "light, unskilled" work, which did not exceed Plaintiff's RFC (Tr. 18). Thus, the ALJ found at step four that Plaintiff was not disabled, and the ALJ did not proceed to step five of the analysis.

### B. Administrative Record

#### 1. Plaintiff's Testimony and Statements

Plaintiff testified that he last worked as a well driller in 2004 (Tr. 222). He testified that he also worked as a spot welder, but could no longer do so because of the lifting required, the chance of getting cut, and the difficulty of breathing smoke due to his years of tobacco use (Tr. 235). Plaintiff testified that he had never been diagnosed with any kind of breathing problem (Tr. 235). He stated that he quit smoking and drinking alcohol in November 2005 (Tr. 231). Plaintiff stated that he could not bathe, shower, or comb his hair, but drove once a month (Tr. 224). He also testified that he could wash dishes and that he took out the trash and occasionally cooked, but could not sweep or vacuum due to leg problems (Tr. 225). Plaintiff stated that he visited friends, went fishing once a month, and went shopping in a mall twice a year (Tr. 226-28).

## 2. Medical Evidence

Plaintiff was admitted to the emergency department at St. Joseph's Hospital on November 4, 2005, with complaints of chest tightness and shortness of breath (Tr. 94). On examination, Plaintiff had tachycardia (rapid heartbeat), and no respiratory difficulties (Tr. 95). The doctor diagnosed pulmonary embolism (occlusion of a pulmonary artery by a blood clot) (Tr. 95). A chest x-ray revealed a soft tissue density around the right trachea region, which the radiologist opined could be a vascularity (Tr. 104). A CT scan revealed saddle embolus (embolism at the bifurcation of the aorta) with extensive right and left lung pulmonary emboli (Tr. 105). Plaintiff's lungs showed no consolidation, pleural effusion (fluid in the thoracic cavity), or pneumothorax (collection of air or gas) (Tr. 105).

On November 5, 2005, Plaintiff was transferred to St. Mary's of Michigan and, at intake, a doctor noted no respiratory distress and normal heart sounds (Tr. 123-25). The doctor sent Plaintiff for a pulmonary arteriogram (radiograph of an artery after injection of a contrast dye), which revealed bilateral pulmonary emboli without hypertension and pharmacologic bilateral pulmonary thrombolysis (break-up of a blood clot) without significant angiographic change (Tr. 126). A chest x-ray revealed no acute cardiopulmonary process (Tr. 130). Dr. Ramasamy admitted Plaintiff to the coronary care unit and noted that Plaintiff's lungs were clear and that his heart rate and rhythm were normal (Tr. 116).

The same day, Dr. Paidipaty examined Plaintiff on referral from Dr. Ramasamy (Tr. 112-14). Plaintiff reported to Dr. Paidipaty that he had a 40-year history of smoking one to two packs of cigarettes a day and drinking 10 to 12 beers every day (Tr. 112). Upon examination, Plaintiff had diminished breath sounds with a few rhonchi and rales, but no abnormal heart

sounds (Tr. 113). Dr. Paidipaty diagnosed Plaintiff with a saddle pulmonary embolism, probable

deep vein thrombosis in the left leg, chronic obstructive pulmonary disease, and hypertension

(Tr. 113). Dr. Paidipaty prescribed Coumadin (warfarin, an anti-coagulant) and bronchodilators

(Tr. 113).

Dr. Badami, a cardiologist, examined Plaintiff on November 5, 2005, and concluded that

Plaintiff had no evidence of myocardial infarction and that he had no significant cardiac

arrhythmias (Tr. 111). Dr. Badami recommended heparin and anticoagulation therapy and

ordered a venous doppler study (Tr. 111). The venous doppler scan of Plaintiff's legs showed

thrombosis in two veins in Plaintiff's left leg (Tr. 131). An echocardiogram showed paradoxical

septal motion (motion of a layer of tissue separating two chambers) with evidence of mild left

ventricular systolic dysfunction and moderate right ventricular systolic dysfunction, and mild

pulmonary hypertension (Tr. 121).

Plaintiff was discharged from Saint Mary's of Michigan on November 14, 2005, at which

time Dr. Richardson noted that during the course of Plaintiff's hospitalization he was placed on

heparin, which improved his chest pain, and that although Plaintiff had a few runs of

tachycardia, he otherwise had a normal sinus rhythm (Tr. 108-09). Dr. Richardson

recommended that Plaintiff follow-up with his primary care physician to monitor PT/INR (a

measure used to monitor warfarin effects and usage), meet with a cardiologist, and undergo a

stress test (Tr. 109).

Plaintiff's primary care physician began monitoring Plaintiff's PT/INR on November 17, 2005

(Tr. 153). During two appointments in November 2005, the doctor observed that Plaintiff's

lungs were clear to auscultation, with easy respiration (Tr. 151, 153).

On May 4, 2006, Dr. Sharma performed a cardiac stress test with Myoview (a cardiac imaging agent) injected to obtain images (Tr. 176). Dr. Sharma reported that overall, the EKG was negative, with fair exercise tolerance (Tr. 176). Dr. Badami reviewed the images and noted that Plaintiff had mild intensity reversible perfusion abnormality in the anterolateral and anteroseptal wall, raising a possibility of ischemia (temporary reduced blood flow to an organ) (Tr. 177). Dr. Badami also reported a mild intensity persistent photopenia (decreased image) involving the inferior wall, most likely secondary to diaphragmatic attenuation (Tr. 177). Dr. Badami recommended that if Plaintiff remained symptomatic, he should have a coronary angiography (Tr. 177).

On May 18, 2006, Dr. Badami performed a cardiac catheterization, which revealed no significant atherosclerotic narrowing (Tr. 172). It also showed minor intimal irregularity involving three arteries (Tr. 172). Dr. Badami recommended that Plaintiff modify his cardiac risk factors (Tr. 172).

In June 2006, state agency physician – Dr. Dunford – reviewed Plaintiff's records and opined that Plaintiff could lift and carry 50 pounds occasionally, lift and carry 25 pounds frequently, and sit, stand, and walk for six hours in an eight-hour workday (Tr. 181). Dr. Dunford concluded that Plaintiff could occasionally crawl and climb ramps, stairs, ladders, ropes, and scaffolds (Tr. 182). Dr. Dunford stated that Plaintiff could frequently balance, stoop, kneel, and crouch (Tr. 182). He further believed that Plaintiff should avoid concentrated exposure to hazards, such as machinery and heights, and respiratory irritants, such as fumes, odors, dusts, gases and poor ventilation (Tr. 184).

Between July 2006, and March 2007, Plaintiff visited his primary care physician on four occasions with various complaints including body shaking, poor memory, and high blood pressure (Tr. 197-200). In July 2006, the doctor ordered a CT scan of Plaintiff's brain, which revealed mild volume loss, greater than expected for his age (Tr. 214). The doctor also noted that Plaintiff's respiration was slightly diminished, but also indicated that his respiration was normal (Tr. 200). In August 2006, the doctor observed that Plaintiff's respiration was diminished in the upper lobes with no congestion or wheezes and recommended that he stop smoking and drinking (Tr. 199).

In January and March 2007, the doctor noted that Plaintiff's lungs were essentially clear to auscultation; the doctor recommended that Plaintiff stop drinking and smoking and follow a low-salt diet (Tr. 197-98).

### 3. Vocational Expert

During the hearing, the ALJ asked the Vocational Expert (VE) to describe the requirements of Plaintiff's past work and the VE responded that Plaintiff's work as a spot welder was light and unskilled, as a welder was heavy and skilled, and as a well driller was heavy and unskilled (Tr. 239).

The ALJ then asked the VE a hypothetical question regarding the existence of jobs for a person of Plaintiff's age, education and past relevant work experience, who had the following limitations: lifting up to 50 pounds occasionally; lifting or carrying 25 pounds frequently; frequent balancing; no climbing ladders, ropes, or scaffolds; occasional stooping, crouching, and climbing ramps and stairs; no kneeling or crawling; and no concentrated exposure to unprotected heights (Tr. 239-40). The VE responded that such a person could perform Plaintiff's past work

as a spot welder (Tr. 240). The ALJ then asked the VE whether her conclusions would change if

the hypothetical person was limited to lifting 20 pounds occasionally, 10 pounds frequently, and

standing or walking no more than six hours in an eight-hour workday (Tr. 241). The VE

testified that with those limitations, such a person could still perform work as a spot welder (Tr.

242).

Plaintiff's attorney asked the VE whether her assessment would change if the following

limitations were added: no concentrated exposure to fumes, odors, dust, gases, and poor

ventilation; and no concentrated exposure to hazards such as machinery and heights (Tr. 244).

The VE testified that those restrictions would preclude work as a spot welder (Tr. 244).

### C.    *Plaintiff's Claims of Error & Defendant's Responses*

Plaintiff's sole argument is that the ALJ failed to include a specific respiratory limitation

in his residual functional capacity (RFC) and in the hypothetical question to the Vocational

Expert (Pl.'s Brief at 13-15).[2]  Plaintiff asserts that the ALJ should have found that he must

avoid

concentrated exposure to fumes, odors, dusts, gases, and poor ventilation (Pl.'s Brief at 14).

Plaintiff's argument is based entirely on Dr. Dunford's report, in which Dr. Dunford concluded

that Plaintiff must avoid concentrated exposure to fumes, odors, dusts, gases, and poor

ventilation (Tr. 184).

Defendant's responds that Plaintiff does not describe any other evidence to support this

limitation, other than the diagnosis and treatment for a saddle pulmonary thrombosis in

---

[2]  Any other objections to the ALJ's decision have been waived, as Plaintiff did not raise them in her
motion for summary judgment.  *See Brainard v. Sec'y of HHS*, 889 F.2d 679, 681 (6th Cir. 1989).

November 2005 (Tr. 113).  Defendant avers that, contrary to Plaintiff's argument, the ALJ

reasonably concluded that Dr. Dunford's opinion was not entitled to significant weight because

Dr. Dunford had not reviewed all of the medical evidence, and substantial evidence supported

the ALJ's conclusion that Plaintiff did not have respiratory limitations (Tr. 15).

## III.    DISCUSSION

### A.    Standard of Review

In enacting the Social Security system, Congress created a two-tiered system in which the

administrative agency handles claims, and the judiciary merely reviews the agency determination

for exceeding statutory authority or for being arbitrary and capricious.  *See Sullivan v. Zebley*,

493 U.S. 521 (1990).  The administrative process itself is multifaceted in that a state agency

makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and

finally to the Appeals Council.  *See Bowen v. Yuckert*, 482 U.S. 137 (1987).  If relief is not found

during this administrative review process, the claimant may file an action in federal district

court.  *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986).

This Court has original jurisdiction to review the Commissioner's final administrative

decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the

court "must affirm the Commissioner's conclusions absent a determination that the

Commissioner has failed to apply the correct legal standard or has made findings of fact

unsupported by substantial evidence in the record."  *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d

591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).  In

deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de

novo, resolve conflicts in evidence, or decide questions of credibility."  *Bass v. McMahon*, 499

F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may...consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence.").  "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'"  *Rogers*, 486 F.3d at 247, quoting, Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g).  Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion."  *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts."

*Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only. *See Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *See Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed.Appx. 521, 526 (6th Cir. 2006).

### B.      Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord, Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed.Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program ("DIB") of Title II (42 U.S.C. §§ 401 *et seq.*) and the Supplemental Security Income Program ("SSI") of Title XVI (42 U.S.C. §§ 1381 *et seq.*). Title II benefits are available to qualifying wage earners who become disabled prior to the

expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled.  F. Bloch, *Federal Disability Law and Practice* § 1.1 (1984).

While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).

"Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also*, 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments, that "significantly limits...physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by his impairments and the fact that he is precluded from performing his past relevant work." *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540. If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

## C.    *Analysis and Conclusions*

As noted earlier, Plaintiff's sole argument on appeal is that the ALJ failed to include a specific respiratory limitation in his residual functional capacity (RFC) and in the hypothetical question to the vocational expert (VE). Specifically, Plaintiff avers that the ALJ should have included Dr. Dunsford's finding that Plaintiff should not be exposed to fumes in his RFC finding and in his hypothetical question to the VE.

Defendant responds that a medical opinion from a non-examining medical expert, such as Dr. Dunford, is considered opinion evidence that must be considered by an ALJ. 20 C.F.R. § 416.927(f)(2); SSR 96-6p. However, Defendant avers that the ALJ is not bound by the opinion of a medical expert, but must explain the weight given to the expert's opinion in his or her

decision. *Id*. Defendant further responds that the ALJ considered Dr. Dunford's opinion in his

review of the overall record, and correctly concluded that Dr. Dunford's opinion was not entitled

to significant weight because it was without the benefit of a full longitudinal picture of Plaintiff's

treatment and because Dr. Dunford did not have access new medical evidence concerning

Plaintiff's condition (Tr. 15-16). Defendant further argues that, after summarizing the medical

evidence, the ALJ accurately concluded that Plaintiff had no on-going appointments with a

cardiologist or any other specialist and that within six months of Plaintiff's hospitalization in

November 2005, Plaintiff's condition had essentially stabilized (Tr. 17). Defendant's arguments

are well-taken.

"While the regulations require Administrative Law Judges to evaluate every medical

opinion in the record, the process of assigning weight to medical opinions in the record begins

with the determination of whether to assign controlling weight to the medical opinion of the

treating source." *Beasley v. Astrue,* 2009 WL 805126, at *4 (W.D.Ky. 2009), citing 20 C.F.R. §

404.1527(d). Controlling weight is assigned to the medical opinion of a treating source only

when it is both well supported by medically acceptable clinical and laboratory diagnostic

techniques, and not inconsistent with other substantial evidence in the record. *Id.* at 4. "The

opinion of an examining physician or psychologist is generally entitled to less weight than that

of a treating physician or psychologist, and the opinion of a non-examining state agency

physician or psychologist is generally entitled to the least weight of all." *Id*. When an ALJ

considers the opinion of a non-examining state agency physician, weight can only be given "to

the extent they are supported by the evidence in the record." *Id*.

A review of the medical records indicates that Plaintiff only received treatment from cardiologists for a pulmonary embolism during a six month period between November 2005, when he was admitted to St. Joseph's Hospital, and May 2006, when Dr. Badami performed a cardiac catheterization (Tr. 94, 172). After reviewing the results of Plaintiff's cardiac catheterization, Dr. Badami only recommended that Plaintiff modify his cardiac risk factors, including hypertension and a history of smoking (Tr. 171-72). After that date, Plaintiff only received conservative treatment from his primary care physician (Tr. 197-200).

The record contains little or no evidence that difficulty breathing was a significant element in Plaintiff's treatment for a cardiac condition and there are numerous treatment notes in which doctors noted that Plaintiff's respiration was essentially normal, even during the period that Plaintiff received treatment from cardiologists. On intake at St. Joseph's Hospital on November 4, 2005, the doctor noted that, while Plaintiff complained of shortness of breath, he had no respiratory difficulties on examination (Tr. 94-95). Plaintiff was transferred to St. Mary's of Michigan the next day and the doctor noted that, although Plaintiff reported experiencing shortness of breath, his breath sounds were normal and he had no respiratory distress on examination (Tr. 124). During his stay at St. Mary's of Michigan, Dr. Paidipaty observed during an examination that Plaintiff had diminished breath sounds with a few rhonchi and rales, however Dr. Ramasamy found that day that Plaintiff's lungs were clear with no rales, rhonchi, or wheezes (Tr. 113, 116). After Plaintiff was discharged, he primarily received conservative treatment from his primary care physician, and although the physician noted on two occasions that Plaintiff's respiration was diminished, he observed on four other occasions that Plaintiff's respiration was essentially normal (Tr. 151, 153, 197-200).

Accordingly, the ALJ reasonably concluded that Dr. Dunford's opinion was not entitled to significant weight because he did not have access to the entire medical record which revealed only a brief period of significant treatment for a cardiac condition (Tr. 15-16). Furthermore, substantial evidence supports the ALJ's RFC finding with respect to Plaintiff's respiratory capacity, because the medical record contains several treatment notes documenting essentially normal respiration, and Plaintiff never received any treatment from a specialist for breathing difficulties. The hypothetical question to the VE was therefore adequate. *See Stanley v. Sec'y of Health and Human Servs.*, 39 F.3d 115, 118-19 (6th Cir. 1994) (The hypothetical question posed to the VE need only include those limitations that are supported by the record).

In sum, after review of the record, I conclude that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

## III.    RECOMMENDATION

Based on the foregoing, it is **RECOMMENDED** that Plaintiff's motion for summary judgment be **DENIED**, that Defendant's motion for summary judgment be **GRANTED** and that the findings and conclusions of the Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v.*

*Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).  The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court.  The response shall address each issue contained within the objections specifically and in the same order raised.

S/Mark A. Randon _____
MARK A. RANDON
UNITED STATES MAGISTRATE JUDGE

Dated:  August 2, 2010

## Certificate of Service

I hereby certify that a copy of the foregoing document was mailed to the parties of record on this date, August 2, 2010, by electronic and/or ordinary mail.

S/Barbara M. Radke _____
Judicial Assistant